UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| LEAD GHR ENTERPRISES, INC., formerly d/b/a GOLDEN HILLS RESORT, now d/b/a DAYS INN LEAD, SOUTH DAKOTA | ) ) ) ) ) | CIV. 12-5056-JLV |
| Plaintiff, | ) ) | **ORDER DENYING DEFENDANT'S MOTION TO STRIKE EXPERT** |
| vs. | ) ) ) | **TESTIMONY AND GRANTING PLAINTIFF LEAVE TO DESIGNATE** |
| AMERICAN STATES INSURANCE CO., | ) ) | **AN INITIAL EXPERT WITNESS** |
| Defendant. | ) | [Docket No. 25] |

**INTRODUCTION**

Plaintiff Lead GHR Enterprises, Inc. (hereinafter "Lead GHR") brings this diversity action alleging claims for breach of contract and bad faith denial of insurance benefits based on the denial by American States Insurance (hereinafter "American States") of a claimed insurance loss arising from an August 3, 2010, hail storm.   Docket No. 1-1.   American States has filed a motion to strike Lead GHR's rebuttal expert witness disclosure.   Docket No. 25.   Lead GHR objects to the motion, but also argues in the alternative for leave to designate its rebuttal expert witness as an initial expert witness.   Docket No. 33, at 5.   The district court, the Honorable Jeffrey L. Viken, Chief Judge, referred American States' motion to strike to this magistrate judge for determination pursuant to 28 U.S.C. § 636(b)(1)(A).

**FACTS**

On December 21, 2012, Lead GHR and American States submitted a "Joint Rule 26(f) Report," which set forth the parties' agreed-upon discovery, motions, and trial deadlines.   Docket No. 21.   The court issued a scheduling order based upon the parties' submission.   See Docket No. 32.   In the court's order, the provisions relating to expert witnesses were as follows.

Plaintiff was required to disclose the identity and reports of any retained experts by May 31, 2013.   Id. at ¶ 7.   Defendants were to make like disclosures by June 28, 2013.   Id.   Any expert not properly designated in accordance with the court's order is not permitted to testify.   Id.   A party designating an expert is required to identify the expert, state the subject matter on which the expert is expected to testify, and disclose the expert's report at the time of designation. Id. at ¶ 8.   The expert's report must contain:

    a. A complete statement of all opinions the witness will express and the basis and reasons for them;

    b. The facts or data considered by the [expert] witness in forming them;

    c. Any exhibits that will be used to summarize or support them;

    d. The witness's qualifications, including a list of all publications authored in the previous 10 years;

    e. A list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

    f. A statement of the compensation to be paid for the study and testimony in the case.

Id.  These requirements are based on Fed. R. Civ. P. 26(a)(2)(B).   Id.   All discovery, including discovery related to expert witnesses, was required to be completed by October 8, 2013.   Id. at ¶ 4.[1]

Lead GHR did not disclose the identity or report of any expert witnesses by the May 31, 2013 court-ordered deadline.   On June 28, 2012, American States designated Timothy Strasser as its expert witness for trial.   Docket No. 27-10, at 2.   In its disclosure, American States provided Mr. Strasser's curriculum vitae, billing rate, incorporated his December 22, 2010 report (the Haag Engineering report), documenting his opinions and conclusions regarding the condition of the Golden Hills Resort's (hereinafter the "hotel") roof,[2] and identified the single case in which Mr. Strasser testified as an expert witness within the last four years. See id. at 2–5.

On July 17, 2013, Lead GHR filed a "Rebuttal Expert Disclosure" wherein it designated Gene Reiling as an expert witness it expected to testify.   Docket No.

---

[1] The court notes that the district court's scheduling order was not entered until August 16, 2013, which was well after the expert designation deadlines agreed to by the parties had already passed.   However, the district court in its scheduling order adopted the parties' agreement as to the expert designation deadlines, so there was no after-the-fact surprise to the parties.   Compare Docket No. 32, with Docket No. 21, at 2.

[2] American States retained Mr. Strasser "to determine the extent of hail-caused damage to [the hotel's] roof" as a result of the August 3, 2010 hail storm.   See Docket No. 27-3, at 3–4.   Following Mr. Strasser's examination of the hotel's roof, he drafted a report documenting his opinions and conclusions on December 22, 2010.   Id. at 7.   American States relied on this report, in part, in reaching its January 10, 2011 decision to deny coverage for Lead GHR's claim of damages to the hotel's roof as a result of the August 3 hail storm. See Docket No. 27-5, at 1, 4.

27-11.   Lead GHR attested that Mr. Reiling is a certified insurance counselor with eleven years of experience as a claims adjustor and twenty-six years of experience as an insurance agent/counselor.   Id. at 2.   In the Rebuttal Expert Disclosure, Lead GHR stated that "Mr. Reiling is expected to testify concerning the standard of care for insurance companies."   Id.   Subsequently, in briefing for this motion, Lead GHR clarified that Mr. Reiling's testimony will be used to rebut "[t]he clear implication [of Strasser's testimony] . . . that 'functional damage' is a sufficient basis to deny coverage on an otherwise covered loss." See Docket No. 33, at 4.   To date, Lead GHR has not disclosed any written report documenting Mr. Reiling's opinions or the facts and data he considered.   See Docket No. 32, ¶ 8; FED. R. CIV. P. 26(a)(2)(B)(i)–(vi).

On September 27, 2013, Mr. Reiling was deposed.   Docket No. 40-1, at 2. Prior to the deposition counsel for American States stated that it was his intention to depose Mr. Reiling as a fact witness due to American States' pending motion to strike Mr. Reiling's testimony as an expert witness.   See Docket No. 42-1, at 3.   At the deposition, counsel for Lead GHR informed counsel for American States that Mr. Reiling could either be deposed as an expert witness, although no written report had been prepared, or as a fact witness.   Docket No. 40-1, at 3.   Counsel for American States chose to depose Mr. Reiling as a fact witness and reserved the right to depose him again later as an expert witness should this court not grant its motion to strike.   See id.

4

At the deposition, Mr. Reiling indicated that he had never seen Mr. Strasser's report (the Haag Engineering report), the contents of which Mr. Strasser would be testifying to as an expert witness and Mr. Reiling would supposedly be called upon to rebut.   Id. at 5–6.   Mr. Reiling further testified that beyond mere oral anecdotes the only document he had reviewed was American States' January 10, 2011 denial of coverage letter.   Id. at 5–7. Mr. Reiling also acknowledged that his knowledge of the condition and background of the hotel's roof, at the time Lead GHR contacted him for advice, was relatively limited.   Id.

On August 8, 2013 American States filed the instant motion to strike Mr. Reiling's expected expert testimony, asserting that Mr. Reiling's designation was untimely and that Lead GHR had not disclosed the report and accompanying information required by Rule 26 and the district court's scheduling order.   See Docket Nos. 25, 26.   Thereafter, on August 26, 2013, American States conditionally designated Peter J. Hildebrand as its sur-rebuttal expert witness should the court refuse to strike Mr. Reiling's expert testimony.   Docket No. 34-3.   American States articulated that it would "expend the time and resources for a full report from [Mr. Hildebrand] only upon the Court's denial of [its] Motion [to strike Mr. Reiling's expected testimony]."   Id. at 1.

## DISCUSSION

### A.    Expert Witness Disclosure Requirements

As an initial matter, the court finds that the expert witness disclosure requirements of Federal Rule of Civil Procedure 26(a)(2) are equally applicable to initial and rebuttal expert witness disclosures.   As explained more fully below, a principal objective of a rebuttal expert witness, as distinguished from an initial expert witness, is "to challenge the evidence or theory of an opponent—and not to establish a case-in-chief."   Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 759 (8th Cir. 2006) (citing Cates v. Sears Roebuck & Co., 928 F.2d 679, 685 (5th Cir. 1991) ("Rebuttal must be kept in perspective; it is not to be used as a continuation of the case-in-chief.")); see supra Part A.1.   To that end, the disclosure requirements promulgated by the Federal Rules of Civil Procedure do not distinguish between initial expert witnesses and rebuttal expert witnesses. See Complaint of Kreta Shipping, S.A., 181 F.R.D. 273, 276, (S.D.N.Y. 1998) ("[R]ebuttal expert testimony is not excepted from the reporting requirements of Rule 26(a)(2)(B)."); see also Cong. Air Ltd. v. Beech Aircraft Corp., 176 F.R.D. 513, 516–17 (D. Md. 1997).

Lead GHR's expert witness disclosure for Mr. Reiling was insufficient.   In the parties' Joint Rule 26(f) Report, both Lead GHR and American States expressly agreed to the "[d]isclosure of the identity of expert witnesses under Rule 26(a)(2)(A) and the full disclosures required by Rule 26(a)(2)(B), accompanied by the written report prepared and signed by the expert witness."

6

Docket No. 21, at 2.   This requirement was also part of the district court's scheduling order.   See Docket No. 32, ¶¶ 7–8.   Thus, it is clear that the parties and the district court incorporated Federal Rule of Civil Procedure 26(a)(2)(A) and (B) by reference into the scheduling provisions dealing with expert witness disclosures.   See Docket Nos. 21, 32.   Moreover, there is no language in either the court's scheduling order or the parties' proposal that would cause the Rule 26(a)(2)(A) and (B) disclosure requirements to apply only to initial expert witnesses as opposed to rebuttal expert witnesses.   Such an interpretation would lead to an unfair and incongruous result.

If the court adopted Lead GHR's interpretation that rebuttal experts are exempted from the disclosure requirements of Rule 26, the result would be that the plaintiff need not identify its rebuttal expert witness nor generate and serve the expert's written report.   Lead GHR's interpretation is not consistent with Rule 26.   For example, Rule 26(a)(2)(D), in setting the time period in which expert testimony must be disclosed, states that "absent a stipulation or a court order, the [Rule 26(a)(2)(A) and (B)] disclosures must be made . . . if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) . . . ."   See FED. R. CIV. P. 26(a)(2)(D)(ii).   Further, the plain language of Rule 26 states that:   "[u]nless *otherwise stipulated* or ordered by the court, this disclosure [i.e. the identity of the expert witness] *must* be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to

provide expert testimony . . . ."  FED. R. CIV. P. 26(a)(2)(B) (emphasis added).

Here, the parties expressly agreed that Rule 26(a)(2)(A) and (B), and not some

other disclosure agreement, would govern their expert witness disclosures.   See

Docket No. 21, at 2.   The court incorporated these same provisions in its

scheduling order.   See Docket No. 32.

Under Rule 26(a)(2)(B), each party's expert must generate a written report

that contains:

> (i)     a complete statement of all opinions the witness will express
>         and the basis and reasons for them;
>
> (ii)    the facts or data considered by the witness in forming them;
>
> (iii)   any exhibits that will be used to summarize or support them;
>
> (iv)    the witness's qualifications, including a list of all publications
>         authored in the previous 10 years;
>
> (v)     a list of all other cases in which, during the previous 4 years,
>         the witness testified as an expert at trial or by deposition; and
>
> (vi)    a statement of the compensation to be paid for the study and
>         testimony in the case.

FED. R. CIV. P. 26(a)(2)(B)(i)–(vi); see also Docket No. 32, ¶¶ 7–8 .

Lead GHR identified Mr. Gene Reiling as an expert witness, thereby

satisfying the requirement called for by Federal Rule of Civil Procedure

26(a)(2)(A) that it identify its expert.   See Docket No. 27-11, at 1.   Lead

GHR then stated that "Mr. Reiling is expected to testify concerning the

standard of care for insurance companies as follows."   Id.   However,

following this statement, Lead GHR, in its description of the standard of

care for insurance companies, essentially only restated its case-in-chief as
to why Lead GHR is entitled to indemnity from American States for
damages suffered as a result of the August 3, 2010 hail storm.   Compare
id. at 1–2, with Docket No. 1-1, at 3–7 (the amended complaint).   Lead
GHR did not proffer any opinions or reports of Mr. Reiling or his basis in
forming his conclusions, nor were any facts or data that Mr. Reiling
considered provided, no summary exhibits were provided, no list of cases
in which Mr. Reiling has testified in were provided, and no statement of
compensation was provided.   See Docket No. 27-11 (The court notes that
Mr. Reiling's years of service as a claims adjustor and insurance
agent/counselor, which speak to his qualifications, was provided.).   Thus,
the disclosure requirements for Mr. Reiling's written report—which was
required to accompany his designation as an expert witness—were not
met.   Accordingly, the court finds that Lead GHR's designation of
Mr. Reiling as an expert witness failed to satisfy the disclosure
requirements for an expert witness' written report under Rule 26(a)(2)(B).

## B. Whether Mr. Reiling is Properly Classified as a Rebuttal Expert Witness

Mr. Reiling is not a rebuttal expert witness.   Rather, Lead GHR is
attempting to utilize Mr. Reiling as an initial expert witness.   The Eighth Circuit,
in Marmo v. Tyson Fresh Meats, Inc., described the attributes of a rebuttal
witness at length.   Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 758–60
(8th Cir. 2006).   "The function of rebuttal testimony is to explain, repel,

9

counteract or disprove evidence of the adverse party.'"   Id. at 759 (quoting

United States v. Lamoreaux, 422 F.3d 750, 755 (8th Cir. 2005)) (citing Faigin v.

Kelly, 184 F.3d 67, 85 (1st Cir. 1999) ("The principal objective of rebuttal is to

permit a litigant to counter new unforeseen facts brought out in the other side's

case.").   "[R]ebuttal evidence may be used to challenge the evidence or theory of

an opponent—and *not to establish a case-in-chief*."   Id. (citing Cates v. Sears

Roebuck & Co., 928 F.2d 679, 685 (5th Cir. 1991) ("Rebuttal must be kept in

perspective; it is not to be used as a continuation of the case-in-chief.")).

Finally, the Eighth Circuit in Marmo concluded that "[A] district court should

allow rebuttal evidence only if it is necessary to refute the opponent's case."   Id.

citing (HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1873 (1976)).

　　　Here, American States timely identified Mr. Strasser, a forensic structural

engineer, as an expert witness and sufficiently disclosed his corresponding

written report.   See Docket Nos. 27-3, 27-10.   "Mr. Strasser will provide expert

testimony based on the opinions contained in his report dated December 22,

2010 . . . ."   Docket No. 27-10, at 2.   Mr. Strasser's December 22, 2010 report

was the product of a two-day examination of the hotel's roof following the August

3, 2010 hail storm, and it represents Mr. Strasser's opinions and conclusions

regarding "the extent of hail-caused damage to [the hotel's] roof."   Docket No.

27-3, at 3.

　　　Lead GHR asserts that "[t]he clear implication of this testimony is that

'functional damage' is a sufficient basis to deny coverage on an otherwise covered

loss. [And,] Mr. Reiling's designation is offered to explain and repel this obvious inference."   Docket No. 33, at 4.   To that end, Mr. Reiling will "testify concerning the standard of care for insurance companies."   Docket No. 27-11, at 1.   However, despite plaintiff's characterization of Mr. Reiling as a rebuttal expert witness, Reiling had not read Mr. Strasser's December 22, 2010 report, and except for the January 10, 2011 denial letter, his knowledge of the condition of the hotel's roof was limited to oral anecdotes.   See Docket No. 40-1, at 3–7.

Unlike Mr. Reiling, Mr. Strasser is neither an insurance agent/counselor nor a claims adjuster.   He is an independent engineer, and he is not purporting to offer testimony as to the standard of care that insurance companies should exercise.   Rather, Mr. Strasser's expected testimony will be limited to his findings, opinions, and conclusions of the condition of the hotel's roof, as documented in his December 22, 2010 report, following the August 3 hail storm. Throughout his report, Mr. Strasser notes the occurrence of several hail indentations on the roof and references the roof's ability to nevertheless continue to function properly.   See Docket No. 27-3, at 3–7.   American States then used, and referenced, Mr. Strasser's December 22 report to support its decision to deny coverage to Lead GHR.   Mr. Strasser was not involved as a decision-maker in American State's decision to deny coverage.

As previously noted, Mr. Strasser's testimony will be limited to the physical condition of the hotel's roof at the time of his inspection and "nothing more." Docket No. 36, at 6.   Mr. Strasser will not offer testimony as to what is a

11

sufficient basis to deny coverage on an otherwise covered loss.   Moreover, Mr. Strasser will not offer testimony regarding the appropriate standard of care for insurance companies.   If Mr. Reiling were disputing or offering evidence contrary to Mr. Strasser's regarding the physical condition of the hotel's roof, his testimony could validly be characterized as rebuttal expert witness testimony. However, it does not appear that Mr. Reiling disputes Mr. Strasser's findings and conclusions regarding the condition of the hotel's roof.   Indeed, as of this juncture it is unclear whether Mr. Reiling is even aware of Mr. Strasser's December 22 report, let alone his findings and conclusions therein.

Therefore, because Mr. Strasser's testimony is limited to the roof's physical condition—not whether "functional damage" is an appropriate basis on which to deny an otherwise covered claim—and because Mr. Reiling seemingly does not dispute Mr. Strasser's findings and conclusions, Mr. Reiling will not "explain, repel, counteract, or disprove" the testimony offered by Mr. Strasser.   See United States v. Lamoreaux, 422 F.3d 750, 755 (8th Cir. 2005).   Mr. Reiling is therefore not properly characterized as a rebuttal expert witness.   Rather, Mr. Reiling is an initial expert witness that is expected to testify as to the appropriate standard of care for insurance companies and his identity and written report should have been disclosed by American States on May 31, 2013, in accordance with the Joint Rule 26(f) Report.   See Docket No. 21, at 2.

Because this court finds Mr. Reiling to be an initial expert witness, rather than a rebuttal expert witness, the court must determine the appropriate

sanction for Lead GHR's failure to timely designate Mr. Reiling and provide his report and accompanying data.

## C. The Remedy for an Insufficient and Untimely Disclosure of an Expert Witness

"The power of the trial court to exclude exhibits and witnesses not disclosed in compliance with its discovery and pretrial orders is essential to the judge's control over the case." Sellers v. Mineta, 350 F.3d 706, 711 (8th Cir. 2003) (citations omitted) (internal quotation marks omitted).   Accordingly, "[w]hen a party fails to provide information or identify a witness in compliance with [Federal Rule of Civil Procedure] 26(a) or (e), the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." Wegener v. Johnson, 527 F.3d 687, 692 (8th Cir. 2008) (citing FED. R. CIV. P. 37(c)(1)).   The Eighth Circuit has previously held that a party's "failure to disclose in a timely manner is equivalent to [a] failure to disclose." Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1008 (8th Cir. 1998) (citing Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir. 1995)).

Under Federal Rule of Civil Procedure 37(c)(1), "[t]he district court may exclude the information or testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless." Wegener, 527 F.3d at 692 (citing FED. R. CIV. P. 37(c)(1); see also Davis v. Thomson Multimedia,

No. 4:01CV3159, 2003 WL 25693572, at *2 (D. Neb. Sept. 2, 2003)).[3]   "The offending party has the burden to demonstrate their conduct was substantially justified or harmless."   Braun v. Menard, Inc., 2013 WL 123712 (D.N.D. Jan. 9, 2013) (citing Fu v. Owens, 622 F.3d 880 (8th Cir. 2010); see also Torres v. City of Los Angeles, 548 F.3d 1197, 1213 (9th Cir. 2008)).

Furthermore, "[t]o aid in the [district] [c]ourt's determination of whether the failure [to disclose] was substantially justified or harmless and to help decide upon an appropriate sanction or remedy, the Eighth Circuit has instructed [district] courts to consider, inter alia, . . . four [additional] factors."   Anderson v. Bristol, Inc., 936 F. Supp. 2d 1039, 1061 (S.D. Iowa 2013).   These factors, as enumerated by the Eighth Circuit, are "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony."   Wegener, 527 F.3d at 692 (citing Sellers, 350 F.3d at 711–12; Marti v. City of Maplewood, 57 F.3d 680, 683 (8th Cir. 1995) (setting forth a variety of possibly relevant factors)); see also Anderson, 936 F. Supp. 2d. at 1061, Jenkins Med. Labs. of E. Iowa, Inc., 880 F.

---

[3] The court notes that the same "substantial justification or harmless" showing under Federal Rule of Civil Procedure 37(c)(1), is applicable to both an untimely disclosure and an insufficient disclosure under Rule 26(a)(2).   See Bonin v. Chadron Cmty. Hosp., 163 F.R.D. 565, 568–569 (D. Neb. 1995) (applying the "substantial justification or harmless" test following an insufficient Rule 26(a)(2) disclosure).   Accordingly, the court's analysis with respect to the appropriate remedy for Lead GHR's untimely and insufficient expert witness disclosure merges at this juncture.

Supp. 2d 946, 956 (N.D. Iowa 2012); cf. Patterson v. F.W. Woolworth Co., 786 F.2d 874 879 (8th Cir. 1986) (citations omitted) (The court gives judicial notice to the similarity of the four factors enunciated in Wegener with the factors identified in Patterson.).

"[F]ailure to disclose an expert witness required by [Federal Rule of Civil Procedure] 26(a)(2)(B) can justify exclusion of testimony at trial." McCoy v. Augusta Fiberglass Coatings, Inc., 593 F.3d 737, 746 (8th Cir. 2010) (citations omitted). However, exclusion is an extreme sanction and "the district court's discretion narrows as the severity of the sanction or remedy it elects increases." Wegener, 527 F.3d at 692 (citing Heartland Bank v. Heartland Home Fin., Inc., 335 F.3d 810 817 (8th Cir. 2003)). The Eighth Circuit has cautioned that "'the exclusion of evidence is a harsh penalty and should be used sparingly.'" Id. (quoting ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, 53 F.3d 186, 190 (8th Cir. 1995)) (citing Bergfeld v. Unimin Corp., 319 F.3d 350, 355 (8th Cir. 2003)).

## 1. Whether Lead GHR's Insufficient and Untimely Expert Witness Disclosure was Substantially Justified

Lead GHR's justification for its failure to comply with the expert witness written report disclosure requirements under the Joint Rule 26(f) Report and for failing to timely identify Mr. Reiling as an expert witness are twofold. With respect to Lead GHR's failure to disclose Mr. Reiling's written report, Lead GHR asserts that its disclosures were sufficient in light of Federal Rule of Civil Procedure 26(a)(2)(A) and (B) and the plain language of the Joint Rule 26(f) Report. For the reasons set forth above, Lead GHR's interpretation of Rule

15

26(a)(2)(B) and the Joint Rule 26(f) Report is in error, see supra Part A.1, and the court is not persuaded that Lead GHR was substantially justified in reaching this interpretation.

With respect to the timeliness of Lead GHR's disclosure of Mr. Reiling as an expert witness, the court is also not persuaded that Lead GHR's actions were substantially justified.   Lead GHR's stated reason for designating Mr. Reiling as an expert witness at the late date he was designated was because once American States designated Mr. Strasser as its "sole expert, it became clear that Defendant was abandoning its original basis for denial [the negligent workmanship exclusion], and attempting to invoke an alleged lack of 'functional damage' as its principle basis for denying coverage."   Docket No. 33, at 5.   Lead GHR asserts that prior to Mr. Strasser's designation as an expert witness its case did not require expert testimony.   See id. ("Consequently, Mr. Reiling was not intended to be used as an expert on the standard of care.").

A party's failure to timely disclose an expert witness and his or her report due to carelessness, inadvertence, or inattention to detail is not a substantial justification for the error.   N. Star Mut. Ins. Co. v. Zurich, 269 F. Supp. 2d 1140, 1145–46 (D. Minn. 2003).   Here, Lead GHR asserts that prior to American States' identifying Mr. Strasser as its sole expert witness it did believe an expert of its own was necessary.   This assertion is without merit.   American States never abandoned its negligent workmanship exclusion coverage position.   See Docket No. 36, at 6, 11–12; see also Docket No. 27-5, at 3.   Similarly, American

16

States' referenced Mr. Strasser's December 22, 2010 report no less than two times in its January 10, 2011 denial of coverage letter in support of its coverage position, so Mr. Strasser's role in this litigation was not a surprise to Lead GHR. See Docket No. 27-5, at 2, 4 ("Per the findings of the Haag Report [Mr. Strasser's report] . . . . American States Insurance Company will be unable to provide any payment for your claim . . . ."). Moreover, Mr. Strasser authored his report documenting the condition of the hotel's roof on December 22, 2010, and American States emailed this report to Lead GHR on January 11, 2011. Docket No. 27-6, at 3. Thus, although American States' did not identify him as an expert witness until June 28, 2013, see Docket No. 27-10, Lead GHR had knowledge of Mr. Strasser and his report for approximately two and one half years prior to the May 31, 2013 deadline to disclose initial expert witnesses. See Docket No. 27-5, at 2.

In light of these facts, the court fails to see how Mr. Strasser's designation as an expert witness so surprised Lead GHR that it was unable to foresee the necessity of Mr. Reiling's expert testimony. See Docket No. 33, at 2. Although American States' began its denial of coverage letter with a reference to the negligent workmanship exclusion, Docket No. 27-5, at 3, Mr. Strasser's report was also clearly referenced as supporting its overall denial of insurance coverage. Id. at 2, 4. Thus, it was clear as of January 10, 2011 that American States was denying coverage based on its negligent workmanship exclusion *and* a lack of insurable damage and that it would rely on Mr. Strasser's report in so doing.

17

Lead GHR's failure to timely identify Mr. Reiling as an expert witness can only be attributed to its counsel's carelessness, inadvertence, or inattention to detail. The court finds that Lead GHR's failure to timely identify Mr. Reiling as an initial expert witness and disclose his written report was not substantially justified.

### 2. Whether Lead GHR's Insufficient and Untimely Expert Witness Disclosure Was Harmless

The court next considers whether Lead GHR's insufficient and untimely expert witness disclosure was harmless.   In this prong of the analysis, the court considers "the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." Wegener v. Johnson, 527 F.3d 687, 692 (8th Cir. 2008) (citing Sellers v. Mineta, 350 F.3d 706, 711–12 (8th Cir. 2003)).

Lead GHR's insufficient and untimely disclosure of Mr. Reiling as an initial expert witness prejudices American States.   Lead GHR's failure to timely designate Mr. Reiling forced American States, in part, to depose Mr. Reiling as a fact witness.   American States was also forced to file its motion for summary judgment without the benefit of Mr. Reiling's expert report.   Anderson v. Bristol, Inc., 936 F. Supp. 2d 1039, 1062 (S.D. Iowa 2013) (citing the time and cost of preparing a motion for summary judgment without the benefit of an expert witness disclosure as at least some degree of prejudice).   Furthermore, Lead GHR still has not disclosed Mr. Reiling's written report as required under Federal Rule of Civil Procedure 26(a)(2)(B).   Thus, if the court was to allow Mr. Reiling to

18

testify as an initial expert witness, American States would be forced to incur additional costs re-deposing Mr. Reiling as an expert witness, as well as the costs associated with procuring its own expert witness to rebut Mr. Reiling's testimony.   Therefore, American States has suffered at least some degree of prejudice as a result of Lead GHR's insufficient and untimely disclosure, and will suffer additional prejudice should the court allow Lead GHR leave to designate Mr. Reiling as an initial expert witness.

Lead GHR's failure to timely designate Mr. Reiling as an expert witness has also disrupted the district court's trial schedule.   Lead GHR disclosed Mr. Reiling's identity to American States on July 17, 2013, over six weeks after the deadline for disclosing initial expert witnesses.   The district court, with few exceptions, adopted the parties' Amended Joint Rule 26(f) Report in its scheduling order.   See Docket Nos. 32, 31-1.   All of the deadlines contained in the scheduling order, including the discovery deadline, have since passed.   See Docket No. 32.   No trial date, however, has been set.   Id.

Furthermore, because Mr. Reiling has not yet drafted his expert report, Lead GHR would require an additional time to generate and serve the report. After which, American States would need time to generate and serve the written report for its rebuttal expert.[4]   See Docket No. 34-3.   Then, Lead GHR would require further time to depose American States' rebuttal expert witness.   Thus,

---

[4] Although American States denominates Mr. Hildebrand as a "sur-rebuttal" expert, the court denominates him as a "rebuttal" expert because, as already explained, the court has determined that Mr. Reiling was not a rebuttal expert at all but an initial expert witness.

Lead GHR's untimely disclosure of Mr. Reiling has materially delayed the district court's trial schedule.

The court, however, recognizes the importance of Mr. Reiling's testimony to Lead GHR's case.   With respect to its breach of contract claim, it will be imperative that Lead GHR demonstrate that the hotel's roof suffered an insurable damage (be it in in lost value, functionality, or aesthetically) as a result of the August 3, 2010 hail storm.   Lead GHR alleges that denial of insurance coverage based solely on a "lack of functional damage" to the hotel's roof is an insufficient basis on which to deny an insured's otherwise covered claim.   Therefore, to the extent that Mr. Reiling's testimony informs the jury that roof damage, other than damage to the functionality of the roof, is nonetheless an insurable loss, it is important for Lead GHR to clearly communicate this to the jury in its case-in-chief for the breach of contract claim.

With respect to Lead GHR's bad faith claim, it is imperative that Lead GHR demonstrate that American States failed to adhere to the standard of care insurance companies are required to follow in denying an insured's claim.   As such, Mr. Reiling's expert testimony identifying the appropriate standard of care for insurance companies to follow when denying an insured's claim, as well as his opinion as to how American States violated this standard, will clearly be important to Lead GHR's case-in-chief for its bad faith claim.

In considering each of these factors in conjunction with the Eighth Circuit's preference against excluding evidence, <u>ELCA Enters., Inc. v. Sisco</u>

20

Equip. Rental & Sales, 53 F.3d 186, 190 (8th Cir. 1995) ("Exclusion of evidence is a harsh penalty, and should be used sparingly), the court finds that Lead GHR's untimely and insufficient disclosure of Mr. Reiling was in fact not harmless. However, excluding Mr. Reiling's expert-witness testimony is too harsh of a penalty under the specific facts of this case.   See Benson v. Giordano, No. 05-4088-KES, 2008 WL 2781202, at *2 (D.S.D. June 9, 2008) ("The purpose of the 'harmless provision' is to 'avoid unduly harsh penalties in a variety of situations.'") (quoting FED. R. CIV. P. 37 advisory committee's note (1993)). Under Federal Rule of Civil Procedure 37(c)(1), instead of excluding evidence, the court may "order payment of the reasonable expenses, including attorney's fees, caused by the failure."   FED. R. CIV. P. 37(c)(1)(A).   The court finds that such a remedy is appropriate in this case.

By granting Lead GHR leave to designate Mr. Reiling as an initial expert witness with additional time to generate and serve his written report on American States, the court gives great weight to the importance of Mr. Reiling's expected testimony, in light of the court's most basic function, namely the search for and ascertainment of the truth—especially during discovery.   See Citizens Bank of Batesville, Ark. v. Ford Motor Co., 16 F.3d 965, 967 (8th Cir. 1994) ("[T]o have not allowed [the witness'] testimony would have been a perversion of the trial process as a search for the truth and could have resulted in a miscarriage of justice.").   Moreover, this court will not "blind[ly] adhere[] to the constraints of a [s]cheduling [o]rder, without proper regard for the bases and effects of

21

non-compliance." Tomlin v. Holecek, 158 F.R.D. 132, 135 (D. Minn. 1994).

However, the court's twin concern "that the flouting of discovery deadlines

causes substantial harm to the judicial system" guides its recommended

discovery deadlines going forward in this case.   See Jochims v. Isuzu Motors,

Ltd., 144 F.R.D. 350, (S.D. Iowa 1992) (citing Geiserman v. MacDonald, 893 F.2d

787, 792 (5th Cir. 1990)).

Lead GHR has had knowledge of Mr. Strasser's report for approximately

two and one half years in advance of its May 31, 2013 initial expert witness

disclosure deadline.   Furthermore, American States referenced Mr. Strasser's

report on multiple occasions when explaining its denial of coverage.   Lead GHR

has had ample time and opportunity to review Mr. Strasser's report and

designate a suitable expert witness prior to the May 31 deadline.   Moreover,

Lead GHR's erroneous interpretation that Federal Rule of Civil Procedure

26(a)(2)(B) does not require Mr. Reiling—when designated as a rebuttal expert

witness—to disclose a written report, has delayed the progression of this case

even further.

Because the district court's discovery deadlines have passed, this court

recommends to the district court that the discovery deadlines be extended to

allow Gene Reiling and Peter Hildebrand to be designated and deposed as expert

witnesses.   The court will order that Lead GHR generate and serve the written

report of its expert witness, Mr. Reiling, on American States within fourteen days

of this order.   The court further orders that American States generate and serve

22

the written report of its rebuttal expert witness, Peter J. Hildebrand, within fourteen days of receiving service of Mr. Reiling's written report.   Additionally, the court orders, if consistent with the district court's scheduling order, that the deposition of both Mr. Reiling and Mr. Hildebrand be taken within thirty days of Lead GHR receiving service of Mr. Hildebrand's written report.   (Mr. Reiling's deposition could be taken as soon as American States is served with his written report.)

Assuming American States is timely served with Mr. Reiling's forthcoming written report, the court discerns that the primary harm suffered by American States, as a result of Lead GHR's insufficient and untimely expert witness disclosure, is economic in nature.   Murphy v. Kmart Corp., No. 07-5080-KES, 2009 WL 1617477, *at 7 (D.S.D. June 9, 2009).   In order to mitigate this harm, Lead GHR is responsible for all costs associated with the re-taking of Mr. Reiling's deposition as an expert witness.   These costs include court reporter fees, expert witness fees in connection with the deposition, and the costs incurred by American States' counsel for lodging and travelling to and from the deposition.   Id.   (citing Magelky v. BNSF Ry. Co., No. 1:06-CV-025, 2008 WL 281778, at *2 (D.N.D. Jan. 29, 2008) (imposing the burden of paying for the costs of deposing expert witnesses, including court reporter fees and the fees charged by the treating physicians' to attend the deposition, on the party that failed to disclose its experts' written reports in accordance with Federal Rule of Civil Procedure 26(a)(2)(B)).   However, American States' is still responsible for its own

23

attorney's fees.   Id. (citing Jochims, 144 F.R.D. at 356 (imposing deposition costs on the party that failed to adhere to the district court's scheduling order, while continuing to require the opposition to pay its own attorney's fees).

## CONCLUSION

In accordance with the above discussion, it is hereby

ORDERED that American States Insurance Company's motion to strike [Docket No. 25] be denied in its entirety.   It is further

RECOMMENDED that the district court extend the scheduling deadlines to allow for the below-described expert discovery to take place.   It is further

ORDERED that Lead GHR Enterprises, Inc. be granted leave to designate Gene Reiling as an expert witness within fourteen (14) days from the date of this opinion.   Lead GHR must turn over all required reports and other data and documents as set forth in the district court's scheduling order at the time of its designation of Mr. Reiling.   It is further

ORDERED that American States Insurance Company be granted leave to designate Peter Hildebrand as an expert witness within fourteen (14) days after receiving the report and other required data concerning Mr. Reiling.   American States must turn over all required reports and other data and documents as set forth in the district court's scheduling order at the time of its designation of Mr. Hildebrand.   It is further

ORDERED that the depositions of Mr. Reiling and Mr. Hildebrand be completed no later than thirty (30) days from the date Lead GHR is served with

Mr. Hildebrand's expert report if such discovery is consistent with the district court's scheduling order.   It is further

ORDERED that Lead GHR Enterprises, Inc. pay to American States the following costs associated with re-deposing Gene Reiling:   court reporter   and transcription fees, expert witness fees in connection with the deposition, and the reasonable cost of travel and lodging incurred by counsel for American States Insurance Company in travelling to and from the deposition.

### NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.   The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.   See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A) (2006).   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.   See FED. R. CIV. P. 72(a). Objections must be timely and specific in order to require review by the district court.   See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990) (per curiam); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated March 25, 2014.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE