UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| LEAD GHR ENTERPRISES, INC., ) | | CIV. 12-5056-JLV |
| formerly d/b/a GOLDEN HILLS ) | | |
| RESORT, now d/b/a DAYS INN ) | | |
| LEAD, SOUTH DAKOTA, ) | | ORDER |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| vs. ) | | |
| ) | | |
| AMERICAN STATES INSURANCE ) | | |
| COMPANY, ) | | |
| ) | | |
| Defendant. ) | | |

Pending before the court is defendant's motion for summary judgment or partial summary judgment and plaintiff's cross-motion for partial summary judgment.[1]  (Dockets 44, 53).  The court referred the motions to Magistrate Judge Veronica L. Duffy for a report and recommendation.  (Docket 64).  On May 15, 2014, Magistrate Judge Duffy filed a report recommending the court deny defendant's motion for summary judgment and grant in part and deny in part plaintiff's motion for partial summary judgment.  (Docket 70).  Defendant timely filed objections.  (Dockets 109, 110).  Plaintiff filed a response to defendant's objections.[2]  (Docket 78).

---

[1] When referring to the record the court cites to the electronic-filing page number.

[2] Fed. R. Civ. P. 72(b)(2) allows a party to respond to an opposing party's objections.

The court reviews *de novo* those portions of the report and recommendation which are the subject of objections.  Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990); 28 U.S.C. § 636(b)(1).  The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

For the reasons stated below, defendant's objections are overruled.  The court adopts the report and recommendation of the magistrate judge.

### A.     MAGISTRATE JUDGE'S CONCLUSIONS OF LAW

Defendant asserts the magistrate judge erred in finding:

1.  American States Insurance Company ("American States") breached its contract of insurance;

2.  An issue of fact exists with respect to the source and scope of the damages;

3.  An issue of material fact exists related to defendant's refusal to pay for full roof replacement and its handling of the claim; and

4.  An issue of material fact exists related to whether plaintiff is entitled to punitive damages.

(Docket 74 at pp. 1-2).  Each objection will be addressed separately.

The recommendation contains a thorough discussion of the facts.  (Docket 70 at pp. 2-16).  Specific facts will be discussed only to the extent they relate to defendant's objections.

**B.     DEFENDANT'S OBJECTIONS**

    **1.     Breach of Contract**

Defendant contends the magistrate judge erred in finding American States breached its contract of insurance by (1) "[m]aking unsupported conclusions and failing to adequately consider the pre-existing condition of the roof when assessing the hail's effect on the roof's overall 'value' "; (2) "[m]isunderstanding the methodology and process related to the Xactimate estimate"; (3) "[f]ailing to consider industry practice"; (4) "[m]isconstruing the basis of American States' coverage position"; and (5) "[f]ailing to adequately consider apposite legal authority."  (Docket 74 at pp. 1-2).

    **a.     Pre-existing condition**

The magistrate judge found defendant breached the insurance policy contract because the August 3, 2010, hail storm caused damage to the hotel's roof and defendant denied coverage for the damage.  (Docket 70 at pp. 20-25). The magistrate judge concluded it is "axiomatic that a dented roof is worth incrementally less than an undented roof."  Id. at p. 22.

Defendant first contends the magistrate judge made "unsupported conclusions" and failed to "adequately consider the pre-existing condition of the roof when assessing the hail's effect on the roof's overall 'value'."  (Docket 74 at p. 1).  Defendant argues that "given the *prior* condition of the roof, at the very least a genuine issue of material fact exists as to whether the hail impacts

3

occurring on August 3, 2010, actually caused any significant effect at all on the property's overall aesthetics or valuation, as the record is replete with information regarding the deficiencies in the overall condition of the roof well before the hail event."³  Id. at p. 8.

The insurance contract between plaintiff and defendant does not define "damage." As a result, the magistrate judge engaged in a lengthy analysis of what constitutes damage, applying "the term's 'plain, ordinary and popular meaning, which the ordinary and average person would understand.' " (Docket 70 at p. 21 (quoting Finck v. Northwest School Dist. No. 52-3, 417 N.W.2d 875, 877 (S.D. 1988)).  The magistrate judge found damage meant "physical harm caused to something in such a way as to impair its value, usefulness, or normal function, commonly associated as causing unwelcome and detrimental effects." Id. at p. 21 (internal quotation marks and citations omitted).

Based on this definition of damage, the magistrate judge concluded the hotel's roof was damaged, even if the damage did not affect the overall functionality of the roof.  Id.  The magistrate judge also concluded the pre-existing condition of the roof was not the basis for defendant's denial of the claim.  This conclusion was based on the fact defendant "ordered [Chris] Shopshear to prepare a repair estimate for twenty-five percent of the left upper

---

³The court notes "American States did not exclude coverage for the roof because of pre-existing conditions when it issued its policy of insurance." (Docket 56-2 at 10; 9:9-12).

slope of the roof, the gable and trim, and the air conditioning condenser unit fins. . . ." Id. at p. 23.  The magistrate judge found defendant failed to present evidence showing "the condition of the roof was so bad prior to the hail storm that it could not be further damaged as a result of the hail storm."  Id.

The court concludes the magistrate judge properly found the August 3, 2010, hail storm caused damage.  Defendant's argument that the hail damage was barely visible and *de minimus* compared to the pre-existing condition of the roof is disingenuous.  Even accepting as true that the pre-existing condition of the roof was not repaired as asserted by plaintiff,[4] the court finds defendant has not produced evidence showing no damage existed at all.  Defendant's position is flatly contradicted by defendant's own action in writing a repair estimate which can only be interpreted as indicating defendant believed the roof was damaged beyond its pre-existing condition.  Defendant's objection is overruled and the court adopts the portion of the recommendation related to this objection.

    **b.**    **Xactimate Estimate**

Defendant argues the magistrate judge erred by "misunderstanding the methodology and process related to the Xactimate estimate."  (Docket 74 at p. 1). The magistrate judge found the estimate given by defendant to repair the

---

[4] "[Rory[ Maynard testified that any inadequacies stemming from Mr. Winter's 2009 installation of the hotel's roof had been sufficiently remedied prior to the August 3, 2010 hail storm." (Docket 70 at p. 23) (citing Docket 48-2, at pp. 9-15).

damaged portions of the roof "was inaccurate and insufficient to cover the costs" of the repairs. (Docket 70 at p. 26). Defendant asserts the magistrate judge "determined that American States' refusal to pay Lead GHR's demand for full roof replacement should be considered a breach, even in light of Lead GHR's refusal to settle for anything *less* than full roof replacement." (Docket 74 at p. 10) (emphasis in original). The court disagrees with defendant's interpretation.

As discussed at length in the recommendation, Mr. Shopshear's estimate generated using the Xactimate software was not accurate. Mr. Shopshear testified during his deposition he knew the estimate was low. (Docket 56-10 at pp. 63-65, 67).

> For example, Mr. Shopshear quoted a $17 additional charge for the removal and replacement of a high roof (roofs of two stories or greater) despite having knowledge that such an amount was an insufficient sum to pay for such work. Mr. Shopshear further estimated an equipment operator cost of $40 per hour, despite the fact that it cost him $69.50 per hour for an operator when he inspected the roof only two to three weeks earlier.

(Docket 70 at p 26) (internal citations omitted). "[Tim] Strasser, in the Haag Report, also found damage on sections of the [hotel] roof's east-facing slope, which may not have been included in Mr. Shopshear's estimate." Id. at p. 27.

Defendant argues Mr. Shopshear was not authorized to change the estimate as quoted by the Xactimate software.  Peter Hildebrand, American States' retained expert testified:

> [Insurance Adjusters] are not allowed to adjust . . . the amount of any estimate if justified.  The custom and practice is to prepare an initial estimate and then discuss whether any adjustments are necessary based upon something unique to the loss.

(Docket 74 at p. 11).  However, this testimony is contradicted by the testimony of Ron Erion, an independent contractor, who testified that he had never been told by American States he could not independently adjust his price estimate to correct known inaccuracies.  (Docket 56-11 at p. 88).

Having reviewed the record, the court finds the magistrate judge did not err in finding a breach of contract in part based on the inaccuracies of the estimate using the Xactimate software.  The record is clear both Mr. Shopshear and defendant knew the estimate was low and failed to make corrections for known inaccuracies.  Defendant's objection is overruled.

### c. Industry Practice

Defendant argues the magistrate judge failed to consider the industry practice in determining "whether hail impacts should reasonably warrant repair or replacement."  (Docket 74 at p. 12).

The magistrate judge was "not persuaded by the learned treatise discussing the instances when replacement is warranted following either

7

functional or cosmetic damage." (Docket 70 at p. 25) (citing Docket 66 (Shaun E. Gessler & Stephen E. Petty, Hail Damage and General Hail-Strike Damage Assessment Methodology, in FORENSIC ENGINEERING: DAMAGE ASSESSMENTS FOR RESIDENTIAL AND COMMERCIAL STRUCTURES (Stephen E. Petty ed., 2013)). The magistrate judge found the excerpt provided by defendant "only identifie[d] instances where there is likely sufficient damage to merit a replacement of the covered property . . . [and did] not address what constitutes damage as a threshold matter or even instances where covered property is cosmetically damaged and only a 'repair' is required." (Docket 70) (citing Docket 66 at pp. 7-8) (internal citations omitted). The magistrate found the treatise was "inapposite at [the] stage where the inquiry is limited to whether the roof was in fact damaged by the hail storm." Id. at p. 25. As a result, the magistrate judge did not consider repair or replacement in concluding the hotel roof sustained damage and that defendant breached the contract.

In a diversity action, state law controls the interpretation of insurance policies. Bell v. Allstate Life Ins. Co., 160 F.3d 452, 455 (8th Cir. 1998). The South Dakota Supreme Court "has long held that custom and practice is immaterial when a contract explicitly deals with the matter claimed to be the subject of custom and practice." Western States Land & Cattle Co., Inc. v. Lexington Ins. Co., 459 N.W.2d 429, 434 (S.D. 1990). In this case, the policy indicated defendant would indemnify plaintiff for "direct physical damage." As

8

discussed above, the August 3, 2010, hail storm caused direct physical damage for which plaintiff was entitled to coverage. Because the insurance policy specifically provides for compensation for direct physical damage, the court need not consider industry practices. Furthermore, the court agrees with the magistrate judge's assessment of the excerpts from the treatise provided by defendant. The treatise deals with specific instances where damage had already been determined and the issue was whether repair or replacement was necessary. In this case, the issue is whether the hotel's roof sustained damage. The court overrules defendant's objection and finds the magistrate judge did not err in distinguishing the treatise provided by defendant.

### d. American States' Coverage Position

Defendant argues the magistrate judge relied "too heavily upon Plaintiff's contention that American States based its coverage position solely upon the lack of 'functional' damage to the roof." (Docket 74 at p. 13). The plaintiff argued, and the magistrate judge agreed, the basis for defendant's denial of plaintiff's claim was the apparent lack of "functional damage" – damage which impairs the functionality of the hotel's roof. (Docket 70 at p. 47).

Defendant asserts a lack of functional damage was not the sole basis for its position and argues coverage was denied because there was neither "functional damage" nor "perceivable damage." (Docket 74 at pp. 13-16). Defendant's argument is tenuous at best. First, defendant's own expert opined

there was damage to the roof.  Mr. Strasser, in the Haag Report, repeatedly referenced the lack of functional damage to the hotel's roof despite identifying hail dents on the roof.  (Docket 47-1).  It is apparent Mr. Strasser believed the roof had sustained damage, just not functional damage.  Id.  Defendant relied on Mr. Strasser's report in concluding the roof sustained no damage.  Second, although defendant contends there was no functional or cosmetic damage, it nevertheless knowingly provided plaintiff with a low bid to cover the damaged portions of roof and air conditioners.  Finally and importantly, the term "damage" is not defined in the policy.  For the court to adopt defendant's position would require the court to ignore completely the plain and ordinary meaning of the term.  See Finck, 417 N.W.2d at 877.

The court finds the magistrate judge did not err in concluding defendant denied coverage for the damage to the hotel's roof because defendant took the position there was no functional damage.  Defendant's objection is overruled.

    **e.**  **Legal Authority**

Defendant argues the magistrate judge erred in distinguishing the cases which it relied upon to support its argument that no breach of contract occurred.  (Docket 74 at p. 16).  Defendant relied upon Mohr v. Am. Auto Ins. Co., No. 01-C-3229, 2004 WL 533475 (N.D. Ill. 2004) and Eledge v. Farmers Mut. Home Ins. Co., 571 N.W.2d 105 (Neb. Ct. App. 1997).

The magistrate judge's recommendation contained an analysis of both cases.  In Mohr, the plaintiff sued the insurer seeking the full replacement value of his home's roof after it suffered damage in a hail storm.  Mohr, 2004 WL 533475 at * 2.  Because of the uniqueness of the roof's thatch-style and cedar shingles, the replacement cost exceeded $400,000.  Id. at *1.  The issue in Mohr was not whether the roof had sustained damage during the hail storm – "it unquestionably had sustained damage" – but whether the insurer was obligated to pay the $400,000 replacement cost.  Id. at p. 12.

The issue in this case is whether the hotel's roof sustained damage as a result of the hail storm.  Mohr does not stand for the principle that damage caused by a hail storm does not constitute damage.  Rather, Mohr stands for the proposition that there was insufficient reduction in aesthetic value to merit a complete roof replacement.  Mohr goes to the scope of the damage, not whether damage occurred.

The magistrate judge also discussed Eledge.  The issue is Eledge was not whether a roof sustained damage but whether the roof sustained sufficient damage that "the only workmanlike way to repair the hail damage would be to replace the entire roof."  Eledge, 571 N.W.2d at 112.  Eledge is distinguishable from the facts of this case because it was implicit in Eledge that the roof had sustained damage.  Here, the issue is whether in fact the hotel's roof sustained damage.

11

The court finds the magistrate judge did not err in distinguishing Mohr and Eledge.  Defendant's objection is overruled.  The court adopts the report and recommendation as it relates to the breach of contract issue.

**2.     Source and Scope of Damages**

The magistrate judge concluded "a genuine issue of material fact exists as to whether the hotel's roof can be partially repaired or replaced or whether it must be fully replaced."  (Docket 70 at p. 35).  The magistrate judge found Ron Erion and Chris Shopshear, both insurance adjusters, provided conflicting testimony regarding whether the hotel's roof could be repaired or replaced partially or whether the entire roof needed to be replaced.  Id. at p. 31.

Mr. Erion testified at his deposition that a metal roof with hail damage cannot be repaired and must be replaced.  (Docket 56-11 at pp. 84-86, 92-94).  Mr. Erion stated his opinion that it was not acceptable to do patchwork jobs on metal roofs and he was not aware of any repair options for "hail damage to a metal roof."  Id. at p. 91.  The basis for Mr. Erion's testimony was that "you have to tear the metal off" to get to the dent and there is "no other way to get under [the roof] and take the dents out."  Id. at p. 92.  Contrary to Mr. Erion's opinions, Mr. Shopshear testified in his deposition that a damaged metal roof can be restored by a partial replacement of the damaged sections.  (Docket 56-10 at pp. 54-55, 68-69).

12

Based on this conflicting testimony, the magistrate judge concluded an issue of material fact exists regarding whether the roof could be partially repaired or replaced or whether the entire roof needed to be replaced. (Docket 70 at p. 35).

Defendant argues Mr. Erion's testimony "did not preclude the possibility of partial roof replacement—and in fact, actually states that partial replacement is indeed appropriate 'depending on the directional and the wind and everything.'" (Docket 74 at p. 22). In making this argument, defendant relies on Mr. Erion's testimony that partial replacement of a roof was feasible when the entire roof was not damaged. Mr. Erion testified:

> Typically if I have -- you know, you're going to have two slopes. You're going to have a south-facing slope and in this case a north-facing slope on the upper roof. There's a chance that only one slope up there would have damage from hail, depending on the directional and the wind and everything. The lower level, now since it's all facing the same direction, if -- if they -- most insurance companies have us test a 10-by-10 -- a 10 foot by 10 foot area for hail damage. We get so many hits within that 10-by-10 test pattern area and we do everything facing that direction, we replace. Very typically if we get over 50 to 60 percent of the total roof surface, then those areas that are not possibly damaged gets replaced as well. That's not 100 percent the case, but that's pretty common.

(Docket 56-11 at 92-93).

The court does not believe this testimony changes Mr. Erion's opinion that partial roof replacement is not acceptable. Mr. Erion was referring to replacing an entire slope of a roof, not merely patching small portions of a metal roof. The

court finds the conflicting opinions of Mr. Erion and Mr. Shopshear create a genuine issue of material fact regarding whether full replacement of the hotel's roof is necessary or whether partial replacement or repair is sufficient. Defendant's objection is overruled.

### 3. Bad-Faith

As discussed above, Mr. Strasser's report indicates the hotel's roof sustained hail damage but that its ability to function properly was not impaired. Defendant relied on Mr. Strasser's report in reaching its determination that the hotel's roof did not sustain any type of damage. This position is supported by American States' chosen representative Jon Clone, who stated "[i]f there's no functional damage to the roof, we do not pay for the replacement or repairs to the roof." (Docket 56-2 at p. 30). However, the insurance policy does not distinguish between types of damage. The term "damage" is not defined anywhere in the insurance contract and must be interpreted using its plain and ordinary meaning. See Finck, 417 N.W.2d at 877.

As a result, the magistrate judge concluded "a reasonable jury could find that American States' denial of coverage based on a purposed lack of functional damage to be an unreasonable basis on which to deny coverage under the insurance policy." (Docket 70 at p. 48). The magistrate judge also found "American States' representation that Mr. Strasser's report indicated a lack of *any* damage is unsupported by the contents of his report, and for American

States to re-characterize it as such could cause a reasonable jury to find that American States exhibited a reckless disregard for its obligations under the insurance policy." Id. at pp. 48-49 (emphasis in original).

In addition to defendant's reliance of Mr. Strasser's report and its interpretation of what constitutes "damage," the magistrate judge also found the "circumstances surrounding Mr. Shopshear's examination of the hotel also [gave] rise to concerns for his independence and, by extension, the reasonableness of America States' investigation of Lead GHR's hail claim." Id. at p. 49. This conclusion was based in part on Mr. Shopshear admitting he does what the insurer wants him to do and that "the insurance company calls the shots on repair." (Docket 56-10 at pp. 42, 60).

The magistrate judge concluded a genuine issue of material fact exists regarding the reasonableness of the process by which defendant investigated plaintiff's hail claim. (Docket 70 at pp. 45-51).

Defendant contends the magistrate judge erred by concluding defendant denied coverage based on the lack of functional damage to the hotel's roof. The court already resolved this objection, finding the magistrate judge did not err in finding defendant denied coverage because of a lack of functional damage.

Defendant also objects to the magistrate judge finding an issue of material fact regarding the level of control American States' may have exerted over Mr. Shopshear and his investigation of the hail claim. Defendant asserts Mr.

Shopshear inspected the roof on two separate occasions without any supervision or instruction by American States and denies Mr. Shopshear was influenced by American States.  (Docket 74 at p. 24).

Having reviewed the record, the court finds there are issues of material fact related to whether American States' denial of plaintiff's claim was reasonable or reckless, and whether the process American States' used in investigating plaintiff's claim was reasonable.

As discussed above, it is for a jury to decide whether American States' interpretation of the term "damage" was reasonable given Mr. Strasser's report indicating hail damage existed but the damage did not affect the functionality of the roof.  This is particularly true when one considers the term "damage" is not defined in the insurance policy.  Whether American States' refusal to pay based on a finding of no functional damage is reasonable or was done in reckless disregard of its obligation under the insurance policy is a question for the jury.

Similarly, the court finds an issue of material fact exists regarding whether the process used by American States to investigate the plaintiff's hail claim was reasonable.  Mr. Shopshear testified he does whatever his client wants him to do.  In this case, Mr. Shopshear readily accepted American States recommended suggestions for repair and then wrote an estimate for that repair.  There is a question of fact as to the level of Mr. Shopshear's independence.  The court agrees with the magistrate judge that "[a] reasonable jury could find that

America States acted without a reasonable basis in denying [plaintiff's] claim on the basis of Mr. Shopshear's examination and price estimate." (Docket 70 at p. 50).

The court finds the report and recommendation is an accurate and thorough recitation of the facts and applicable case law.  Defendant's objection is overruled.

### 4. Punitive Damages

"Because American States denied coverage on the basis that hail damage must also impair the roof's functionality before it was required to pay a claim under the insurance policy and because the accuracy and independence of Mr. Shopshear's estimates are questionable," the magistrate judge concluded plaintiff's request for punitive damages should be placed before a jury.  (Docket 70 at p. 52) (internal citations omitted).

Punitive damages are available "[i]n any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed." SDCL § 21-3-2 (2014).  "An insurer's clear breach of contract or denial of a claim that is not fairly debatable may indicate malice." Bertelsen v. Allstate Ins. Co., 796 N.W.2d 685, 699 (S.D. 2011) (citations omitted).

For the same reasons as discussed above in relation to the bad-faith claim, the court finds a genuine issue of material fact exists regarding whether

17

American States' interpretation of the insurance policy and its denial of the claim was reasonable or reckless.  The court finds an issue of material fact also exists regarding whether American States' investigation of the hail claim through Mr. Shopshear was reasonable.  Defendant's objection is overruled.

## ORDER

Based on the above analysis, it is hereby

ORDERED that defendant's objections (Docket 74) to the report and recommendation are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 70) is adopted in full in accordance with the analysis above.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgement (Docket 53) is granted in part and denied in part.  The court grants the motion on the breach of contract claim by holding that American States Insurance Company breached the insurance contract.  The court denies the motion on the breach of contract claim as to damages.

IT IS FURTHER ORDERED that defendant's motion for summary judgment or partial summary judgment (Docket 44) is denied.

Dated September 30, 2014.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE